*362 OPINION OF THE COURT
HARDIMAN, Circuit Judge.
In 1965, Congress amended the Social Security Act to create a program for states to assist the poor with their medical expenses. Through this program, known as Medicaid, the fifty states pay medical expenses on behalf of qualified beneficiaries. For more than thirty years, in circumstances where third parties are liable for such medical expenses, the Pennsylvania Department of Public Welfare (DPW) has recouped its expenditures by asserting liens against future settlements or judgments. In Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 280 n. 9, 291-92, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), the Supreme Court assumed without deciding that such liens, when limited to the portion of a settlement or judgment constituting reimbursement for medical costs, are an implied exception to the federal law prohibiting states from imposing liens on the property of Medicaid beneficiaries. We now must decide whether these liens in fact constitute such an exception.
I
This appeal involves a putative class action filed by three Pennsylvania Medicaid beneficiaries subject to DPW liens. The District Court certified a question for interlocutory review pursuant to 28 U.S.C. § 1292(b), asking us to determine whether state agencies responsible for administering the Medicaid program have the authority to assert such liens and, if so, whether Pennsylvania’s statutory framework is consistent with the Supreme Court’s decision in Ahlbom.
We begin by reviewing the facts of the state court cases filed by each of the three plaintiffs (collectively, the Beneficiaries).
A
1
Rita L. Tristani underwent a bunionectomy in 1999 that resulted in pain and discoloration in her leg. Her surgeon suspected that she was suffering from deep venous thrombosis, and immediately referred her to the hospital. Upon her arrival, Tristani was examined by a medical resident who misdiagnosed her condition as superficial thrombophlebitis. Roughly one week after the misdiagnosis, Tristani suffered a massive pulmonary embolism and stroke, which left her partially paralyzed, disfigured, and brain-damaged. Consequently, Tristani resides in a facility where she receives full-time medical care.
Tristani was eligible for assistance under Pennsylvania’s Medicaid program, and the DPW' — the state agency responsible for administering Medicaid — paid for her medical care. In September 2001, Tristani filed a medical malpractice action in which she sought, inter alia, the costs of medical expenses that had been paid on her behalf by the DPW. Approximately two months after the complaint was filed, the DPW wrote Tristani’s counsel that, as a recipient of medical assistance, Tristani had assigned her right to recover medical expenses to the DPW. In May 2002, Tristani preliminarily settled her malpractice claim for $5.2 million. Thereafter, seeking to recoup funds it had expended for Tristani’s medical care, the DPW sent Tristani’s counsel another letter asserting a lien of $247,514.98 against her settlement. The agency later reduced this lien by 40% to $148,508.99 to bear its proportionate share of Tristani’s contingency fee obligation to her counsel. On June 2, 2005, the state trial court issued an order directing payment of the DPW’s lien in full.
2
In January 2005, Joshua Valenta was injured in a traffic accident and suffered *363 relatively minor, but permanent injuries. Valenta was eligible for government assistance, and the DPW paid $15,539.61 for his medical expenses.[1] Following his accident, Valenta sued the tortfeasor, whose insurance carrier settled the case for $130,000. In April 2005, the DPW sent Valenta’s attorney a letter informing him that, as counsel for a Medicaid recipient in a third-party liability tort action, Pennsylvania law required him to satisfy the DPW’s claim prior to making a distribution to his client. In August 2005, the DPW sent another letter asserting a lien for $15,581.56 against Valenta’s settlement, which it reduced to $10,000 to account for attorneys’ fees. Valenta’s attorney promptly mailed the DPW a check for $10,000 to satisfy the lien.
3
A.H. is a young girl who suffered brain injuries following surgery to correct a congenital heart defect. The DPW enrolled A.H. in an MCO and paid capitation fees totaling $25,095.91 on her behalf. The MCO’s payments to A.H.’s health care providers totaled $171,617.18. The DPW also paid $1,458.10 on a fee-for-service basis for A.H.’s benefit. In June 2005, A.H. filed a medical malpractice claim against her doctors, which was settled in April 2007 for an undisclosed amount. After the settlement, the DPW asserted a lien for $106,306.88 to reflect the cost of her medical care, less attorneys’ fees and pro-rata costs. A.H. challenged the validity of the DPW’s lien, and, instead of paying the lien directly, A.H.’s mother obtained court approval to place the disputed funds in an escrow account pending the outcome of this litigation.[2]
B
In May 2006, Tristani and Valenta commenced a putative class action in the District Court against: Estelle B. Richman, Pennsylvania’s Secretary of Public Welfare; Feather Houston, Richman’s predecessor; and the DPW. Tristani and Valenta sought a refund of their payments to the DPW, as well as declaratory and injunctive relief invalidating Medicaid liens generally. They argued that the DPW’s claims were prohibited by the anti-lien and anti-recovery provisions of the Social Security Act. See 42 U.S.C. § 1396p(a)-(b). Alternatively, they asserted that Pennsylvania’s scheme for recouping medical expenses from Medicaid recipients was impermissible under the Supreme Court’s holding in Ahlbom.[3]
Several months after Tristani and Valenta commenced their action, Richman *364 and Houston (collectively, the Secretaries) filed a motion to dismiss. Following two amendments to the complaint, the Secretaries again filed a motion to dismiss and, after oral argument, the District Court denied their motion without prejudice.
In April 2008, Richman and Houston filed a motion for summary judgment. The next day, Tristani and Valenta filed a motion for partial summary judgment in which they sought a declaration that: (1) Pennsylvania’s practice of asserting Medicaid liens is invalid; (2) the DPW’s ability to recover medical payments made by MCOs is limited to the capitation payments made by the State; and (3) Pennsylvania’s current method of determining the portion of a settlement that constitutes medical costs violates the Supreme Court’s holding in Ahlbom.
The District Court issued a comprehensive opinion denying Tristani and Valenta’s motion for partial summary judgment and granting in part and denying in part the Secretaries’ motion. The District Court determined that federal law prohibits the DPW from asserting liens against third-party recoveries obtained by Medicaid beneficiaries. Nevertheless, the District Court denied Tristani’s and Valenta’s claims for monetary damages, holding that the Secretaries were entitled to qualified immunity. The District Court also held that Pennsylvania’s practice of apportioning settlements between medical costs and other portions of the recovery was permissible under Ahlbom. The Court denied the Secretaries’ motion for summary judgment as to Tristani’s and Valenta’s claims for declaratory and injunctive relief, but noted an unresolved issue regarding their standing to seek equitable relief.
After the District Court issued its order, the parties filed a joint motion to add a party to cure the potential standing problem. The Court permitted the parties to add A.H. who, both parties agreed, had standing with respect to the remaining issues. The District Court thus amended its prior order to deny the Secretaries’ motion for summary judgment with regard to the validity of 62 Pa. Stat. Ann. § 1409(b)(7)- — Pennsylvania’s statutory mechanism for attaching liens to recoveries made by Medicaid beneficiaries — and granted the parties’ motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).
II
Although the parties agree that we have jurisdiction over this interlocutory appeal, we “have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.” Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (internal citation omitted). The District Court had jurisdiction over the Beneficiaries’ federal claims pursuant to 28 U.S.C. § 1331, and exercised supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(a).
*365 The District Court certified an interlocutory appeal to this Court pursuant to 28 U.S.C. § 1292(b), which provides:
[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order....
Consistent with the requirements of § 1292(b), the Secretaries timely petitioned this Court for leave to appeal. After we granted the Secretaries’ petition for interlocutory appeal, the Beneficiaries filed a notice of cross-appeal in the District Court.
The first issue we must confront with respect to our jurisdiction is whether the Secretaries have standing to appeal the order of the District Court. “The general rule is that a party may not appeal a favorable decision.” Ryan v. C.I.R., 680 F.2d 324, 325 (3d Cir.1982) (citing Elec. Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242, 59 S.Ct. 860, 83 L.Ed. 1263 (1939)). Here, although the District Court held that the Medicaid liens asserted by the DPW were impermissible, it ultimately concluded that Richman and Houston were entitled to qualified immunity. Thus, the Secretaries prevailed on this issue in the District Court. Cf. Horne v. Coughlin, 191 F.3d 244, 247-48 (2d Cir.1999) (noting that when a District Court makes an adverse constitutional holding followed by a determination that qualified immunity exists, appellate review of the constitutional decision may be precluded for lack of standing).
After issuing its opinion, however, the District Court permitted the parties to add A.H. to the litigation to ensure that the Beneficiaries would have standing to pursue declaratory and injunctive relief. Following the addition of A.H., and prior to certifying this interlocutory appeal, the District Court amended its order to deny the Secretaries’ motion for summary judgment with respect to the validity of the Pennsylvania law permitting Medicaid liens. This issue was included in the District Court’s certification for interlocutory appeal, and constitutes an adverse judgment from which the Secretaries may properly seek appellate review.[4]
Having decided that we possess jurisdiction over the Secretaries’ appeal, we must now determine whether we have jurisdiction over the Beneficiaries’ cross-appeal. Although they filed a notice of cross-appeal in the District Court, the Beneficiaries failed to petition for leave to appeal in this Court. We must decide whether this omission deprives us of jurisdiction over the issues raised in their cross-appeal. Stated differently, when an *366 appellant has timely sought and received leave to appeal, is a cross-appellant obligated to separately seek permission to appeal? [5]
In Yamaha Motor Corp., U.S.A v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), the Supreme Court explained: “[a]s the text of § 1292(b) indicates, appellate jurisdiction applies to the order certified to the court of appeals.... [Therefore,] the appellate court may address any issue fairly included within the certified order.” Accordingly, when we granted the Secretaries’ petition for leave to appeal pursuant to § 1292(b), we obtained jurisdiction over the entire certified order of the District Court, including any portions that were decided in the appellant’s favor. See United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d 1109, 1122 (10th Cir.1999) (Briscoe, J., concurring and dissenting). Thus, to the extent that the issues raised in the Beneficiaries’ cross-appeal were included in the certified order of the District Court, they are properly before us on appeal.[6]
III
We exercise plenary review over an order resolving cross-motions for summary judgment. Cantor v. Perelman, 414 F.3d 430, 435 n. 2 (3d Cir.2005). In determining whether summary judgment is appropriate, we apply the same standard as the District Court. Bucks Cnty. Dep’t of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 65 (3d Cir.2004). Summary judgment should be granted when “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
IV
A
Having established that jurisdiction lies, we proceed to the principal substantive *367 issue, namely, the lawfulness of the DPW’s practice of imposing liens on judgments or settlements that Medicaid beneficiaries obtain from third parties. We begin with an overview of the applicable statutory provisions.
The Social Security Act provides that, as a condition to receiving Medicaid assistance, states must require individuals “to assign [to] the State any rights ... to support ... and to payment for medical care [the individual has] from any third party.” 42 U.S.C. § 1396k(a)(l)(A). The Act also requires states to “ascertain the legal liability of third parties ... to pay for care and services under the plan” and, “in any case where such a legal liability is found to exist after medical assistance has been made ... [, to] seek reimbursement ... to the extent of such legal liability.” Id. § 1396a(a)(25)(A)-(B).
However, and of significance to this appeal, the Act also provides:
No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except—
(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
(B) in the case of the real property of an individual — [who is in a nursing home and required by law to spend his own income on those expenses, and who cannot reasonably be expected to return home.]
Id. at § 1396p(a)(l). This is known as the “anti-lien” provision.
Of equal importance, the Act provides that “[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except [in limited circumstances not- at issue in this case].” Id. at § 1396p(b)(l). This is known as the “anti-recovery” provision.
B
Pennsylvania has enacted a detailed statutory framework in an attempt to comply with the requirements of the Social Security Act. Consistent with the federal mandate, 62 Pa. Stat. Ann. § 1404(b) provides that “[t]he acceptance of medical assistance benefits shall operate as an assignment to [the DPW], by operation of law, of the assistance recipient’s rights ... to payment for medical care from any third party.”
Although a Medicaid beneficiary must assign the portion of her recovery relating to medical costs to the State, Pennsylvania’s statutory framework provides the beneficiary with a number of options for prosecuting the remainder of her claim against a third party. For example, after providing notice to the DPW, a Medicaid beneficiary may elect not to include medical costs as damages in her lawsuit against a third party. See 62 Pa Stat. Ann. § 1409(b)(5).[7] If the beneficiary chooses not to include medical costs as part of her damages, the State will not be involved in the prosecution of her claim.
When a Medicaid beneficiary chooses to pursue damages for medical costs, however, the method of transferring this portion of the recovery to the State will vary depending on whether the State is involved in the lawsuit. If the action is prosecuted by the Medicaid beneficiary alone, after the payment of litigation expenses and attorneys’ fees, “the court or agency shall allocate the judgment or award between *368 the medical portion and other damages and shall allow [the DPW] a first lien against the medical portion of the judgment or award, [in the] amount of [the DPW’s] expenditures for the benefit of the beneficiary under the medical assistance program.” Id. § 1409.1(b)(1).[8] By contrast, if the claim is prosecuted jointly by the beneficiary and the DPW, after payment of litigation expenses and attorneys’ fees, “the court or agency shall allocate the judgment or award between the medical portion and other damages and shall make an award to [the DPW] out of the medical portion of the judgment or award [in] the amount of [the] benefits paid on behalf of the beneficiary under the medical assistance program.” Id. § 1409.1(b)(2).
C
The Beneficiaries claim the DPW’s practice of asserting liens on recoveries made by Medicaid recipients violates the anti-lien and anti-recovery provisions of the Social Security Act. Despite having assigned to Pennsylvania the portion of their recovery relating to medical costs, the Beneficiaries claim they retain a property interest in their choses in action, including their claims for medical expenses. Thus, they claim that § 1409.1(b)(1) — which permits Pennsylvania to take a lien on the portion of a settlement that constitutes medical costs — effectively authorizes the imposition of a lien on a Medicaid beneficiary’s property in violation of federal law. The DPW counters that its liens fall within an exception to the federal prohibitions on imposing liens on the property of Medicaid beneficiaries and on recovering medical assistance payments made on their behalf. The DPW further asserts that the Supreme Court’s decision in Ahlbom, in which the Court assumed without deciding that such an exception exists, demonstrates that its liens are valid.
The District Court held that the Pennsylvania statute authorizing Medicaid liens was preempted by federal law. The District Court recognized the tension between the plain language of the anti-lien and anti-recovery provisions of the Social Security Act, which prohibit states from recouping medical assistance payments made on behalf of Medicaid beneficiaries, and the forced assignment and reimbursement provisions of the Act, which require states to recover medical assistance payments made on behalf of beneficiaries. Relying on dicta in the Ahlbom decision, the District Court determined that Medicaid beneficiaries, despite having assigned their recovery of medical costs to the State, retain an enduring property interest in this portion of their recovery. See Tristani v. Richman, 609 F.Supp.2d 423, 480 (W.D.Pa.2009) (“Since Pennsylvania law permitted Tristani and Valenta to recover the entire amounts of their damages (including the amounts of payments made by the DPW to provide them with medical assistance), the entire settlement awards were their ‘property.’” (citing Ahlborn, 547 U.S. at 285, 126 S.Ct. 1752)). The District Court then attempted to harmonize the conflicting provisions of the Social Security Act by interpreting them to require Pennsylvania to take an active role in the recovery of medical costs, either by intervening in lawsuits initiated by Medicaid beneficiaries or *369 by directly pursuing liable third parties.[9] Based on this approach, the District Court held that § 1409.1(b)(1) is preempted by the anti-lien provision. As we shall explain, we are unpersuaded by the District Court’s analysis.[10]
D “Our task is to give effect to the will of Congress, and where its will has
been expressed in reasonably plain terms, ‘that language must ordinarily be regarded as conclusive.’ ” Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (quoting Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). As outlined above, the Social Security Act requires states to “seek reimbursement” for medical assistance payments made on behalf of *370 Medicaid beneficiaries whenever “legal liability [of a third party] is found to exist.” 42 U.S.C. § 1396a(a)(25)(B). Notably, this provision is silent regarding the method by which reimbursement must be sought. The Act also states that, as a condition to eligibility, Medicaid beneficiaries must assign to the state any right they may have to recover medical costs from a third party. The difficulty we perceive in this case is that the plain language of these provisions conflicts with the equally plain prohibition against states imposing “liens ... against the property of’ Medicaid beneficiaries, 42 U.S.C. § 1396p(a)(l)(A), or “recovering] ... any medical assistance correctly paid on behalf of an individual,” id. § 1396p(b)(l). The initial question, therefore, is whether the plain language of these provisions can be reconciled.
The District Court attempted to resolve the apparent conflict by interpreting the Act to require intervention by the states. However, the Court did not adequately explain, nor is it apparent to us, how its holding is consistent with the anti-recovery provision, which prohibits states from seeking “adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State [medical assistance] plan.” Id. By its terms, the anti-recovery provision limits the ability of states to recover medical assistance payments made on behalf of Medicaid beneficiaries, regardless of the specific collection method utilized. Thus, the District Court’s conclusion that Pennsylvania must intervene in tort actions filed by Medicaid beneficiaries cannot be reconciled with the anti-recovery provision.
E
The Supreme Court has stated that “[w]hen ‘interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the legislature.’” Kokoszka v. Bedford, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (quoting Brown v. Duchesne, 60 U.S. 183, 19 How. 183, 194, 15 L.Ed. 595 (1857)). When we consider the Social Security Act as a whole, including its text, structure, purpose, and legislative history, we conclude that the DPW’s practice of asserting liens against that portion of a Medicaid beneficiary’s recovery relating to medical costs must be viewed as an exception to the anti-lien and anti-recovery provisions.
The anti-lien and anti-recovery provisions significantly predate the reimbursement and forced assignment provisions. As we shall explain, Congress was pursuing different goals in enacting these two sets of provisions. While the anti-lien and anti-recovery provisions were intended to ensure that Medicaid beneficiaries were not forced to directly bear the costs of their medical care, the reimbursement and forced assignment provisions were intended to allow states to recoup their expenditures for medical assistance payments when third parties are held liable. By allowing states to recover these expenditures, Congress both protected the public fisc and ensured that beneficiaries did not receive a windfall by recovering medical expenses they did not pay. In order to effectuate the goals animating these conflicting provisions, we must view the reimbursement and forced assignment provisions as exceptions to the anti-lien and anti-recovery provisions.[11]
*371 l
An examination of the Social Security Act reveals that Congress has consistently pursued the dual goals of protecting the personal property of Medicaid beneficiaries while ensuring that liable third parties reimburse states for Medicaid expenditures. As we shall describe below, the Act’s evolution over time reveals that Congress has not viewed these objectives to be in conflict. Rather, the available evidence indicates that Congress did not intend that liens for medical costs would fall within the scope of the anti-lien and anti-recovery provisions.
The anti-lien and anti-recovery provisions were first incorporated into the Social Security Act in 1960, some five years before Medicaid came into being. They required state medical assistance plans for the aged to:
provide that no lien may be imposed against the property of any individual prior to his death on account of medical assistance for the aged paid or to be paid on his behalf under the plan (except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual), and that there shall be no adjustment or recovery (except, after the death of such individual and his surviving spouse, if any, from such individual’s estate) of any medical assistance for the aged correctly paid on behalf of such individual under the plan.
42 U.S.C. § 302(a)(ll)(E) (Supp. II 1959-1961).[12] By its terms, this provision cre *372 ates a system in which elderly recipients of medical assistance are insulated from paying the costs of their care during their lifetimes and the lifetimes of their surviving spouses. Nevertheless, this system, which ultimately allows a state to recoup its medical assistance expenditures directly from the estate of a deceased beneficiary, in no way entitles beneficiaries to retain monies paid to them by liable third parties in compensation for their medical costs.
The legislative history of the anti-lien and anti-recovery provisions confirms this understanding.[13] As a Senate Report discussing the provision stated, pursuant to the congressional framework “[a] State would not be permitted as a condition of medical assistance to impose a lien on the property of a recipient during [her] lifetime .... However, the bill would permit the recovery from an individual’s estate after the death of [her] spouse if one survives [her].” S. Rep. No. 86-1856, at 6 (1960), reprinted in 1960 U.S.C.C.A.N. 3608, 3615. The report then explains that “[t]his provision was inserted in order to protect the individual and [her] spouse from the loss of their property, usually the home, during their lifetime.” Id. Congress’s concern for protecting a Medicaid beneficiary’s personal assets — not her interest in recovering medical costs paid on her behalf — clearly animated the enactment of the anti-lien and anti-recovery provisions. Moreover, a beneficiary’s property interest in her home is readily distinguishable from the inchoate interest that she retains in her chose in action, particularly since Congress has mandated assignment of that chose to the state.[14] We cannot agree that Congress intended these provisions to prohibit states from placing liens on recoveries from liable third parties, especially in light of the reimbursement and forced assignment provisions it later added to the Social Security Act.
The reimbursement provision of the Act was first enacted in 1967, and required state medical assistance plans to provide:
(A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services are made available for [purposes of determining a potential recipient’s eligibility for medical assistance] ... [and] that in any case where such a legal liability is *373 found to exist after medical assistance has been made available on behalf of the individual, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.
42 U.S.C. § 1396a(a)(25) (Supp. Ill v.2 1965-1968). The plain language of this provision requires states to consider third-party liability when making Medicaid eligibility determinations, and to seek reimbursement of sums expended when third-party liability is unknown at the time payments are made. In this way, the reimbursement provision protects the public fisc while preventing Medicaid beneficiaries from receiving a windfall. Although the anti-lien and anti-recovery provisions were in force when the reimbursement provision was enacted, Congress made no attempt to reconcile this new requirement with the prohibition against states recovering medical assistance payments made on behalf of Medicaid beneficiaries. Instead, the statute simply requires states to consider any known third-party liability as an asset of the individual in determining eligibility, and to seek reimbursement when liability is discovered after medical assistance payments have been made.[15]
The legislative history of the reimbursement provision confirms that Congress intended to ensure that states recover medical assistance payments made on behalf of Medicaid beneficiaries whenever third parties are found liable for medical expenses. As stated during a Senate hearing:
Unquestionably, many beneficiaries will be paid twice through receipt of benefits under the [MJedicaid program, and from obligations imposed upon the insurance industry by the liability system. To the extent that the [Medicaid] program is intended to assist the medically indigent, it is not consistent to apply [MJedicaid benefits to those whose needs are being met by a third party under a legal or contractual obligation. To the extent that health care protection is being provided from sources other than under the social security program, the resulting duplication is discriminatory and a wasteful, inefficient use[ ] of public funds.
Social Security Amendments of 1967: Hearing Before the S. Comm. On Finance, 90th Cong. 1572 (1967) (statement of Wallace M. Smith).
The forced assignment provision of the Social Security Act was first enacted in 1977. As a condition of receiving Medicaid benefits, the forced assignment provision obligates states to require individuals
to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this title and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.
42 U.S.C. § 1396k(a)(l)(A). By its terms, this provision requires individuals, as a condition of receiving Medicaid benefits, to confer upon the state their right to recover the costs of-their medical care. This is further evidence of congressional intent to ensure that Medicaid beneficiaries do not receive a windfall by recovering medical costs they did not pay.
*374 Our review of the evolution of the various provisions of the Social Security Act reveals that the only way to harmonize the conflicting language of the anti-lien and anti-recovery provisions with the later-enacted reimbursement and forced assignment provisions is to conclude that the anti-lien and anti-recovery provisions do not apply to medical costs recoverable from liable third parties. The anti-lien and anti-recovery provisions evince congressional intent to protect the assets of Medicaid recipients, and to ensure that beneficiaries are not forced to personally bear the costs of their medical care. Meanwhile, the reimbursement and forced assignment provisions require states to recover the costs of medical assistance payments despite the apparent prohibition against seeking recovery of medical assistance payments. It defies common sense to conclude that Congress intended to protect the rights of Medicaid beneficiaries to recover medical costs that they never paid in the first place. Indeed, federal law requires beneficiaries to assign their right to recover such medical costs to the state, because it is the state — not the beneficiaries — that pays these costs.
2
Our conclusion that liens on medical costs are excepted from the anti-lien and anti-recovery provisions is bolstered by the forced assignment provision. The District Court viewed the forced assignment provision as evidence of congressional intent to require states to intervene in lawsuits initiated by Medicaid beneficiaries against third parties. We see it differently.
As the Secretaries correctly point out, a partial assignment typically creates a lien on a portion of the recovery in favor of the assignee. See, e.g., Matchett v. Wold, 818 F.2d 574, 576 (7th Cir.1987) (“An ordinary lien attaches to property in being; the statutory attorney’s lien attaches to an expectation [of recovery], the court thought the statute better described therefore as making the attorney in effect a partial assignee of his client’s interest in the lawsuit....”); Angeles Real Estate Co. v. Kerxton, 737 F.2d 416, 419 (4th Cir.1984) (“[U]nder general common law principles, a partial assignment creates an equitable lien in favor of the assignee.”); Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc., 498 F.2d 836, 837 (2d Cir.1974) (“[T]he assignment of [part of] an existing right [under a judgment] creates an immediate lien in favor of the assignee that is valid against later lien creditors of the assignor.”). We do not believe that Congress would prohibit states from imposing liens to recoup medical costs while at the same time imposing a requirement that has the legal effect of creating such liens. The more logical conclusion is that Congress understood that the legal effect of the forced assignment provision would be to provide the states with a lien on recoveries of medical costs. Thus, in our view, the forced assignment provision is evidence of Congress’s intent to except recoveries of medical assistance payments whenever third parties are found liable for them.
Unlike the District Court, we do not believe that Congress intended to require states to intervene in Medicaid beneficiaries’ lawsuits in order to recoup medical costs from third parties. Congress enacted the forced assignment provision more than a decade after it began requiring states to “seek reimbursement” for medical costs from liable third parties. The purpose of the provision was to ensure that states were able to recoup their outlays. Thus, far from restricting the state’s ability to recoup medical expenses, the forced assignment provision was intended to facilitate the state’s recovery of those funds.
*375 Finally, practical considerations weigh in favor of our holding today. At present, over thirty states use liens to recoup medical expenses paid on behalf of Medicaid beneficiaries from liable third parties. See State v. Peters, 287 Conn. 82, 946 A.2d 1231, 1239 n. 19 (2008). And disparate federal and state courts have overwhelmingly endorsed this practice. See supra note 9. In Pennsylvania, the authority for imposing such liens dates back to 1980. See 1980 Pa. Laws 510 (“After payment of ... expenses and attorneys’ fees the court or agency shall, on the application of the department, allow as a first lien against the amount of such judgment or award, the amount of the department’s expenditures for the benefit of the beneficiary under the medical assistance program____”). Since then, Congress has had occasion to amend the anti-lien and anti-recovery provisions, and has chosen not to prohibit this widespread and pervasive practice. Its failure to do so further supports our holding that Medicaid medical expense liens are excepted from the anti-lien and anti-recovery provisions. See Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (“Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.”).
3
The text of the Social Security Act, when combined with its structure, purpose, and legislative history, reveals that Congress sought to accomplish different goals in enacting the anti-lien and anti-recovery provisions on the one hand, and the reimbursement and forced assignment provisions on the other hand. While the anti-lien and anti-recovery provisions were intended to protect the assets of Medicaid recipients, the subsequently-enacted forced assignment and reimbursement provisions were intended to limit the financial burden of Medicaid on the states and ensure that Medicaid beneficiaries did not receive a windfall by recovering medical costs they did not pay.[16] In this context, the forced assignment and reimbursement provisions are best viewed as creating an implied exception to the anti-lien and anti-recovery provisions of the Act. Our conclusion is bolstered by the fact that the statutory mechanism created by Congress for beneficiaries to relinquish their right to recover medical assistance payments to the state — a partial assignment — itself creates a lien. Consequently, we hold that liens on settlements or judgments limited to medical costs are not prohibited by the anti-lien and anti-recovery provisions of the Social Security Act.
V
A
Having determined that liens limited to recoveries for medical costs are not prohibited by the anti-lien and anti-recovery provisions, we now turn to Pennsylvania’s method of apportioning settlements between medical costs and the remainder of a beneficiary’s recovery. Typically, a Medicaid beneficiary’s recovery from a third party will compensate her for a variety of damages, including medical costs, lost wages and pain and suffering. Pursuant to the Supreme Court’s holding in Ahlbom, states may be reimbursed only for the portion of the recovery constituting compensation for medical expenses. Many settlements, however — including those at *376 issue in this appeal — are not specifically apportioned between medical costs and other types of damages. The question before us is how, in the absence of explicit allocation, one may ascertain what portion of a settlement is allocable to medical expenses recoverable by the state.
Pennsylvania has addressed this allocation problem by providing:
Except as otherwise provided in this act, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary’s action or claim, with or without suit, is subject to the department’s claim for reimbursement of the benefits provided any lien filed pursuant thereto, but in no event shall the department’s claim exceed one-half of the beneficiary’s recovery after deducting for attorney’s fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.
62 Pa. Stat. Ann. § 1409(b)(ll). As the District Court noted, the DPW has construed this provision as “ ‘establishing] a statutory default rule of allocation for tort recoveries consistent with Ahlborn.’ ” Tristani v. Richman, 609 F.Supp.2d 423, 464 (W.D.Pa.2009) (quoting 37 Pa. Bull. 4881, 4228 (Sept. 8, 2007)). Pursuant to the DPW’s construction of section 1409(b)(ll), in the absence of a judicial allocation of damages, the DPW is entitled to recover the lesser of its actual expenditures on medical costs or one half of the beneficiary’s recovery after expenses.
In this appeal, the Beneficiaries’ medical costs constitute less than one-half of their recoveries; therefore, the DPW has recovered (or, in AH.’s case, seeks to recover) the full amount of its Medicaid expenditures, less a pro rata reduction for attorneys’ fees and costs. The Beneficiaries argue, however, that they settled their claims for less than full value, and that the DPW’s recovery for medical costs should be reduced correspondingly. Because no such reduction occurred, the Beneficiaries claim that the DPW’s liens exceed the scope of the interests they assigned to the agency in violation of Ahlbom.
B
The District Court rejected the Beneficiaries’ argument, concluding that Pennsylvania law validly adopted a default apportionment mechanism to divide settlements between medical costs and other expenses. The District Court noted that although section 1409(b)(ll) predates Ahlbom, thereafter the DPW has interpreted it as establishing a default apportionment between non-medical and medical expenses. This interpretation has since been codified in 55 Pa.Code § 259.2, which states:
(b) In determining the portion of a tort recovery that represents payment for medical care by a third party, the Department will apply the following interpretations:
(2) In the absence of a court order allocating tort proceeds among categories of damages, /& of the net proceeds are allocated by law to be available to repay injury-related [Medicaid] expenses. The amount of net proceeds is computed by deducting from the gross proceeds the attorney’s fees, litigation costs and medical expenses relating to the injury that were paid for by the beneficiary prior to the settlement of the injured beneficiary’s action or claim.
(5) The Department is not bound by a private agreement between the parties to a tort claim regarding allocation of the proceeds.
(d) If a court does not adjudicate the amount of the Department’s claim against a settlement, the Bureau of Hearings and Appeals has jurisdiction to *377 hear and determine an appeal by a beneficiary contesting the amount of the Department’s claim.
This regulation explains section 1409(b)(ll)’s relationship to the rule of Ahlbom, and formally establishes a default method for establishing the portion of a recovery relating to medical costs.[17]
The District Court found this scheme to be consistent with federal law. The Court noted that Ahlbom recognized the possibility that plaintiffs would manipulate settlement agreements to artificially depress the portion attributable to medical expenses. In Ahlbom, the Supreme Court suggested that this risk could “be avoided either by obtaining the State’s advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.” Ahlborn, 547 U.S. at 288, 126 S.Ct. 1752. In a footnote, the Court stated:
[Sjome States have adopted special rules and procedures for allocating tort settlements in circumstances where, for example, private insurers’ rights to recovery are at issue. Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation.
Id. at n. 18. The District Court held that Pennsylvania’s 50% allocation and agency appeal provisions are “special rules and procedures” of this kind that are consistent with the federal requirement that the State’s recovery not exceed the portion of the third-party recovery attributable to Medicaid-paid expenses. The Supreme Courts of North Carolina and Idaho have reached similar conclusions with respect to analogous state laws. See State Dep’t of Health & Welfare v. Hudelson, 146 Idaho 439, 196 P.3d 905, 911 (2008); Andrews ex rel. Andrews v. Haygood, 362 N.C. 599, 669 S.E.2d 310, 314 (2008).
Alternatively, the District Court held that Pennsylvania’s apportionment scheme is valid because, under Pennsylvania law, a settlement represents full compensation for an individual’s damages, which implies that the Beneficiaries cannot, after settling, claim that they were not made whole. Under Pennsylvania law, “when a subrogor settles a claim, he essentially waives his right to a judicial determination of his losses, and therefore conclusively establishes the settlement amount as full compensation for his damages.” Goldberg v. Workers’ Comp. Appeal Bd. (Girard Provision Co.), 152 Pa.Cmwlth. 559, 620 A.2d 550, 552 (1993). “Hence, in effect, [Pennsylvania] law indicates that when an individual settles his suit he is later estopped from claiming that his damages exceed the amount settled for.” Allstate Ins. Co. v. Clarke, 364 Pa.Super. 196, 527 A.2d 1021, 1025 n. 4 (1987). The Pennsylvania Supreme Court has never explicitly adopted this rule, but as the cases quoted above demonstrate, it has gained some traction in the lower courts. Accordingly, the District Court held that, even in the absence of the statutory default allocation, the “made whole” doctrine would fix the portion of the Beneficiaries’ settlement attributable to Medicaid expenses at an amount equal to the DPW’s actual expenditures.
We agree with the District Court’s conclusion that Pennsylvania’s apportionment scheme is valid. Pursuant to the current *378 statutory framework, beneficiaries unhappy with its results may appeal the default allocation. This mechanism is consistent with the Supreme Court’s holding in Ahlbom, and comports with the practice of other states. Therefore, we will affirm this portion of the District Court’s order.[18]
C
Despite the validity of Pennsylvania’s current apportionment scheme, the question remains whether the prior scheme, which did not provide a right of appeal from the default allocation, is valid under Ahlbom.[19] The District Court upheld the scheme, but we find it problematic.
Although the Ahlbom Court acknowledged the existence in state law of “special rules and procedures” for allocating settlements, and left open the possibility that such rules may be employed to address concerns about settlement manipulation, 547 U.S. at 288 n. 18, 126 S.Ct. 1752, it did not give states unfettered discretion to allocate settlements without regard to the actual portion attributable to medical expenses. Indeed, Ahlbom expressed a preference for resolving allocation disputes “either by obtaining the State’s advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.” Id. at 288, 126 S.Ct. 1752.
We express no view as to whether allocation disputes of this type must be adjudicated by a court, or may instead be resolved through other “special rules and procedures.” Id. at 288 n. 18, 126 S.Ct. 1752. We hold merely that in determining what portion of a Medicaid beneficiary’s third-party recovery it may claim in reimbursement for Medicaid expenses, the state must have in place procedures that allow a dissatisfied beneficiary to challenge the default allocation. As the Beneficiaries point out, without such a rule nothing would prevent states from allocating 75%, 90% or even 100% of a settlement to medical expenses, thereby eviscerating the rule promulgated by Ahlbom. Because the District Court concluded otherwise, we will reverse its order in this respect and remand for further proceedings consistent with this opinion.
VI
In Ahlbom, the Supreme Court assumed without deciding that liens on recoveries made by Medicaid beneficiaries for medical costs constitute an exception to the anti-lien and anti-recovery provisions of the Social Security Act. Medicaid beneficiaries in Pennsylvania have questioned this assumption by challenging the State’s practice of utilizing such liens. Our examination of the text, structure, history and purpose of the Social Security Act leads us to conclude that liens limited to medical costs are not prohibited by the anti-lien and anti-recovery provisions of the Act. Accordingly, we uphold Pennsylvania’s longstanding practice of imposing such liens.
The Beneficiaries have also challenged Pennsylvania’s practice of disaggregating medical costs to comport with the requirements of Ahlbom. We hold that Pennsylvania’s current statutory framework, which *379 affords Medicaid recipients a right of appeal from the default allocation, is a permissible default apportionment scheme. The prior framework, which did not afford beneficiaries a right of appeal, is invalid under Ahlbom.
For the foregoing reasons, we will affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

.Unlike Tristani, Valenta was enrolled in a managed care organization (MCO) that contracts with Pennsylvania to provide medical assistance. Pursuant to that contractual arrangement, the MCO receives a monthly capitation fee for each enrolled member, in exchange for which the MCO pays health service providers for the cost of the member's medical care. Although Valenta was enrolled in an MCO, the DPW paid the bulk of his medical fees directly. In addition to these direct payments, the DPW also paid the MCO $1,001.90 in capitation fees on Valenta’s behalf, and the MCO ultimately disbursed $42.35 in connection with his injuries.

. In addition to challenging the validity of the DPW’s liens generally, A.H. asserts that the DPW’s practice of recouping the cost of medical care exceeding the capitation fees it paid is impermissible. The District Court order did not address whether the DPW is limited to recouping the amount it paid in capitation fees, or if it could instead seek reimbursement for the full amount of medical payments expended by the MCO. Because this issue was not addressed below, we decline to address it in this interlocutory appeal.

. In Ahlbom, the Supreme Court reviewed an Arkansas law that permitted the imposition of liens on recoveries made by Medicaid beneficiaries against third parties. Pursuant to the *364 Arkansas statute, the state could impose a lien in an amount equal to the medical assistance payments made on behalf of Medicaid beneficiaries, without regard to what portion of the settlement related to medical costs. The Court assumed without deciding that liens limited to medical costs are an implied exception to the federal law prohibiting liens on the property of Medicaid beneficiaries. Ahlborn, 547 U.S. at 284-85, 126 S.Ct. 1752 ("To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision.... [T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care.”) (internal citation omitted). The Court held that, because the Arkansas statute permitted the State to lien portions of the recovery not relating to medical costs, it was preempted by the federal ban on placing liens on the property of Medicaid beneficiaries.

. We also note that the Supreme Court has held that "[i]n an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art[icle] III." Deposit Guar. Nat’l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 334, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). To the extent the Secretaries otherwise lack standing, we hold that their continuing interest in the outcome of this litigation, combined with the importance of the District Court’s collateral determination regarding the validity of the Pennsylvania law, makes this an appropriate case for appellate review.

. The Courts of Appeals for the Second and Tenth Circuits have held that § 1292(b) requires a separate cross-application for leave to file a cross-appeal. See Tranello v. Prey, 962 F.2d 244, 247-48 (2d Cir.1992); United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d 1109, 1114 (10th Cir.1999) (finding no jurisdiction under § 1292(b), but exercising pendent appellate jurisdiction); cf. Roth v. King, 449 F.3d 1272, 1282-83 (D.C.Cir.2006) (recognizing the tension between the filing requirements of Rule 5 and the jurisdiction granted by § 1292(b), but avoiding the problem by declining to engage in discretionary review).
We note that both the Second and Tenth Circuits based their analyses in part on Federal Rule of Appellate Procedure 5(b), which governs appeals by permission, and provides that a cross-petition for leave to file a cross-appeal may be filed within 10 days after the initial petition is served. At the time these cases were decided, it was understood that Rule 5 was jurisdictional. More recently, however, the Supreme Court has clarified that non-statutory rules of procedure cannot be regarded as jurisdictional because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction.” Kontrick v. Ryan, 540 U.S. 443, 452-56, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

. Our holding with respect to our jurisdiction under § 1292(b) should not be understood to imply that cross-appeals may be omitted with impunity. Federal Rule of Appellate Procedure 5(b)(2) requires a putative § 1292(b) cross-appellant to file a cross application "within 10 days after the [initial] petition is served.” Because Rule 5(b)(2) is not jurisdictional, however, it must be raised by a party. See Kontrick v. Ryan, 540 U.S. 443, 452-56, 124 S.Ct. 906 (holding that court-adopted claim processing rule "can ... be forfeited if the party asserting the rule waits too long to raise the point”). In this appeal, the Secretaries have forfeited their Rule 5(b)(2) argument. Although they make a one-line reference to the impropriety of the Beneficiaries' cross appeal in a footnote to their opening brief, and again in a footnote to their reply brief, they also concede that we have "discretion” to consider issues presented by the Beneficiaries in their cross-appeal.

. Although § 1409(b)(5) was not enacted until 2008, it is relevant because the Beneficiaries seek declaratory and injunctive relief.

. Section 1409.1 was enacted in response to the Supreme Court's decision in Ahlbom, to permit settlements or judgments that include Medicaid and non-Medicaid components to be apportioned between the two items of recovery. In all respects relevant to the imposition of liens at issue here, it is identical to § 1409(b)(7), which was in force before As-born and which remains valid law except as modified by § 1409.l’s apportionment provisions. See 62 Pa. Stat. Ann. § 1409(b)(7) (”[T]he court ... shall ... allow as a first lien against the amount of such judgment or award, the amount of the expenditures for the benefit of the beneficiary under the medical assistance program.”).

. Like the District Court, our dissenting colleague suggests that the language of the Social Security Act implies that “Congress wanted states to initiate suits against or intervene in actions against liable third parties, and wanted Medicaid recipients to cooperate in those efforts by providing state agencies with any information they might require.” Dissent Typescript at 382. Although it is true that § 1396a(a)(25)(A) speaks of “pursuing claims against ... third parties,” we note that § 1396a(a)(25)(A) addresses only the duty of the state or local agency "to ascertain the legal liability of third parties” whereas § 1396a(a)(25)(B), which discusses what must be done once a third party is deemed liable, provides only that "the State or local agency will seek reimbursement ... to the extent of such legal liability.” The absence of the phrase "against ... third parties” from the portion of the statute that directs states to seek reimbursement is telling.

. To date, no federal appellate court has ruled on the validity of Medicaid liens limited to medical costs. Numerous district courts and state appellate courts, however, have assumed that such liens are valid in the wake of Ahlbom. See, e.g., Armstrong v. Cansler, 722 F.Supp.2d 653 (W.D.N.C.2010) (endorsing the use of Medicaid liens limited to the portion of a settlement attributable to medical costs as consistent with Ahlborn); State v. Peters, 287 Conn. 82, 946 A.2d 1231 (2008) (concluding that federal law does not prohibit the use of liens for recouping medical expenses); see also In re Zyprexa Prods. Liab. Litig., 452 F.Supp.2d 458 (E.D.N.Y.2006) (permitting the use of Medicaid liens limited to the portion of a recovery attributable to medical costs); Lima v. Vouis, 174 Cal.App.4th 242, 94 Cal.Rptr.3d 183 (2009) (upholding the use of Medicaid liens to recover medical expenses after Ahlbom, but requiring the trial court to determine what portion of a settlement constitutes payment for medical expenses); Russell v. Agency for Health Care Admin., 23 So.3d 1266 (Fla.Dist.Ct.App.2010) (permitting the use of Medicaid liens to reimburse the State for medical costs); Dep’t of Health and Welfare v. Hudelson, 146 Idaho 439, 196 P.3d 905 (2008) (holding that liens on medical costs are an exception to the anti-lien provision); Weaver v. Malinda, 980 So.2d 55 (La.Ct.App.2008) (permitting the State to take a Medicaid lien limited to the portion of a settlement allocated to medical expenses); Andrews v. Haygood, 362 N.C. 599, 669 S.E.2d 310 (2008) (permitting the use of liens to recover Medicaid expenses limited to medical costs); Edwards v. Ardent Health Servs., 243 P.3d 25 (Okla.Civ.App.2010) (upholding the use of Medicaid liens limited to the portion of a recovery attributable to. medical costs); E.D.B. v. Clair, 605 Pa. 73, 987 A.2d 681 (2009) (acknowledging that Ahlbom's holding invalidated the Arkansas law while permitting Pennsylvania's DPW to place liens on the medical expenses of Medicaid recipients).
Although these decisions have permitted the use of Medicaid liens limited to medical costs, the majority of them have not clearly articulated their rationale for doing so. Indeed, some courts appear to be under the misapprehension that the Supreme Court held such liens to be permissible in Ahlborn. See, e.g., In re Matey, 147 Idaho 604, 213 P.3d 389, 394 (2009) ("[A] state may not seek reimbursement from damages awarded for lost earnings, lost household services, non-economic injury and the like because, according to the Supreme Court, those damages are the property of the Medicaid recipient. However, the Supreme Court specifically stated that damages received for medical care did not constitute property subject to the anti-lien provisions.”) (citing Ahlborn, 547 U.S. at 284, 126 S.Ct. 1752).

. This analysis is entirely consistent with the Supreme Court's holding in Ahlbom. The purpose of the anti-lien and anti-recovery provisions was to ensure that Medicaid beneficiaries would not bear the burden of their medical costs during their lifetimes. Consequently, to the extent that a settlement *371 or judgment paid‘by a third party does not pertain to medical costs, the state has no recourse to those funds. As the reimbursement and forced assignment provisions make clear, however, the portion of a settlement or judgment that does relate to medical costs properly belongs to the state. To hold to the contrary would be to provide Medicaid beneficiaries with a windfall in direct contravention of the congressional mandate that states recoup the costs of medical assistance from liable third parties.

. In 1962, the language of § 302 was duplicated in 42 U.S.C. § 1382(a)(15)(D), a provision governing state plans for aid to the aged, blind, or disabled. See Pub.L. 87-543, tit. I, § 141(a), 76 Stat. 172, 197 (1962). Discussion during hearings before the Senate indicates that the purpose of the provision was to protect the homes of blind recipients of aid. See An Act to Extend and Improve the Public Assistance and Child Welfare Services Programs of the Social Security Act, and for Other Purposes: Hearings Before the Comm, on Finance of the S., 87th Cong. 362 (1962) (statement of John F. Nagle, Chief, Washington Office, National Federation of the Blind) ("State laws which require an applicant for blind aid to accept a lien on his property before he will be granted assistance, serve to convince the applicant — as nothing else can— of the full extent of his pauperized state.... A lien is such a restriction upon property and its free use that, although a home may represent a lifetime of thrift and denial, it is not available for use to the blind owner who wishes to make a new start in life.”). In 1965, largely the same language was included in 42 U.S.C. § 1396a(a)(18), a provision governing federal grants to states for medical assistance programs. See Pub.L. 89-97, tit. I, § 121(a), 79 Stat. 286, 344 (1965); cf. S.Rep No. 89-404, at 80 (1965) reprinted in 1965 U.S.C.C.A.N. 1943, 2020 (stating that pursuant to § 1396a "adjustment or recovery would be made only at a time when there is no surviving child who is under the age of 21 or who is blind or permanently disabled”).
These three anti-lien and anti-recovery provisions remained in place until 1982, when Congress consolidated them into 42 U.S.C. § 1396p. See Pub.L. 97-248, tit. I. § 132(b), 96 Stat. 324, 370 (1982). Section 1396p actually broadened the authority of states to seek reimbursement from Medicaid beneficiaries by allowing them, in certain circumstances, to impose liens on the homes of beneficiaries during their lifetimes. See S. Rep. No. 97-530, at 437 (1982) (“States are allowed to impose liens on real property including the home, of institutionalized [Mjedicaid beneficiaries who the State determines, after notice and opportunity for a hearing, are reasonably likely to remain in a nursing home for the remainder of their lives."). Section 1396p remains in force today, and has undergone numerous amendments adjusting the exact circumstances under which states may recover from Medicaid beneficiaries. For purposes *372 of our analysis, however, the various iterations of the anti-lien and anti-recovery provisions are irrelevant. Our focus is on the fact that the provisions have been in force since 1960, have been repeatedly re-enacted, and have consistently been animated by a legislative intent to insulate Medicaid beneficiaries from the costs of their medical expenses, and, in particular, to protect the family home.

. The Supreme Court has instructed that “where ... resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.” Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). As we explained supra, the plain language of the forced assignment and reimbursement provisions of the Social Security Act irreconcilably conflicts with that of the anti-lien and anti-recovery provisions. Accordingly, recourse to legislative history is necessary here.

. We need not decide whether Medicaid beneficiaries have more than a nominal property interest in the portion of recoveries from third parties attributable to medical costs. Whatever the extent of that property interest, it is sharply curtailed by the forced assignment provision, which requires potential Medicaid beneficiaries to assign this interest to the state as a condition of eligibility.

. The reimbursement provision permits states to deny Medicaid benefits outright when third-party liability is known at the time Medicaid eligibility is determined and to recover their outlays when third-party liability is later discovered. Thus, although the anti-lien and anti-recovery provisions protect the assets of the Medicaid beneficiary, the reimbursement provision demonstrates that Congress did not believe that individuals should be entitled to have their medical expenses paid twice.

. Although the Dissent shares our concern in this respect, it argues that any windfall to Medicaid beneficiaries can be avoided by precluding beneficiaries from claiming amounts paid by Medicaid in their suits against third parties. We are unpersuaded by this approach because it would result in a windfall to tortfeasors.

. We note that, with the exception of subsection (d), which permits a beneficiary to appeal the default allocation of his recovery, this regulation is identical to the law in force prior to the Ahlbom decision. Because the Beneficiaries’ claims predate the regulation, there is some uncertainty as to whether they may avail themselves of the regulatory appeal process. The parties agree, however, that to date the DPW has not engaged in any individualized apportionment of the Beneficiaries' settlements.

. Because we uphold Pennsylvania's framework, we do not reach the merits of the District Court’s alternative holding premised on the “made whole” doctrine.

. Tristani’s and Valenta’s claims regarding the validity of the apportionment scheme are moot because the District Court correctly determined that any recovery on their part is barred by the Eleventh Amendment and the doctrine of qualified immunity. A.H., however, challenged the validity of the DPW’s lien prior to making a payment. Moreover, the DPW asserted its lien before section 1409 was amended. A.H. therefore has a viable claim for declaratory and injunctive relief.