Filed 9/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| L.Q., a Minor, etc., | B305723 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC608973) |
| v. | |
| CALIFORNIA HOSPITAL MEDICAL CENTER et al., | |
| Defendants; | |
| BRADLEY P. GILBERT, as Director, etc., | |
| Claimant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Reversed with directions.

Xavier Becerra and Rob Bonta, Attorneys General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Tara L. Newman, Deputy Attorneys General, for Claimant and Appellant.

Law Offices of Michels & Lew, Philip Michels and Steven B. Stevens for Plaintiff and Respondent.

---

Respondent L.Q. (plaintiff) is a severely disabled child who suffered catastrophic injuries during her birth in 2015. She sued various medical providers for professional negligence, settling those actions in 2019 for $3,000,000. The California Department of Health Care Services (hereafter, DHCS), through its director, appellant Bradley Gilbert, asserted a lien on plaintiff's settlement to recover what DHCS paid for plaintiff's medical care through the state's Medi-Cal program. The trial court denied the lien, concluding that it was prohibited by the "anti-lien" provision of the federal Medicaid Act, 42 U.S.C. section 1396 et seq. (the Medicaid Act or the Act).

We conclude that the trial court erred by denying DHCS's lien. While the anti-lien provision of the Medicaid Act generally prohibits liens against the property of Medicaid beneficiaries, other provisions of the Act carve out exceptions for settlements or judgments recovered from third-party tortfeasors, to the extent such settlements or judgments are attributable to payments made by the state for the beneficiaries' medical care. We therefore will reverse and remand the matter to the trial court to determine what portion of the settlement properly is subject to DHCS's lien.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

Plaintiff was catastrophically injured during her birth in June 2015, and as a result suffers severe disabilities, including quadriplegic cerebral palsy, microcephaly, profound developmental delays, profound intellectual disabilities, and epilepsy.

In 2016, through her mother and guardian ad litem, Carolina Q., plaintiff sued the California Hospital Medical Center, USC-Eisner Family Medicine Center, and individual doctors and nurses for professional negligence. Plaintiff and defendants settled the action in 2019 for $3,000,000, subject to court approval.

### B. DHCS Lien

Since plaintiff's birth, DHCS has paid for her medical care through the California Medical Assistance Program, known as Medi-Cal. In March 2017, DHCS notified plaintiff of its right pursuant to Welfare and Institutions Code[1] section 14124.76 to assert a lien on any recovery she obtained through her medical negligence action; subsequently, in 2019, DHCS advised that it had paid $672,959 for plaintiff's medical care and would assert a lien of $477,264 (DHCS's expenditures, less its statutory share of attorney fees and litigation costs) on the settlement funds.

In June 2019, plaintiff and defendants sought trial court approval of the settlements. The court granted the petitions to approve the settlements, ordered $649,289 to be held in plaintiff's attorney's trust account to satisfy a potential Medi-Cal lien, and

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

3

reserved jurisdiction to determine any claim for a reduction of the lien.

In November 2019, plaintiff filed a motion in the trial court pursuant to section 14124.76 to determine DHCS's lien. Plaintiff contended the federal Medicaid Act precluded states from imposing liens on judgments or settlements received by Medi-Cal recipients from third-party tortfeasors, and thus DHCS was not entitled to any portion of the settlement. Alternatively, plaintiff urged she had recovered only about 11 percent of her total damages, and thus DHCS's recovery should also be limited to 11 percent of its total expenditures, or about $72,000.[2]

DHCS opposed plaintiff's motion. It contended that it was entitled pursuant to section 14124.72 to recover the reasonable value of the medical care provided to plaintiff, reduced by the DHCS's share of plaintiff's attorney fees and litigation costs. DHCS further contended that the federal Medicaid Act did not preclude it from asserting a lien on plaintiff's recovery; to the contrary, it asserted the Act *required* it to seek reimbursement from that recovery.

On February 6, 2020, the trial court issued an order denying DHCS's lien. It found that although California law

---

[2]    Plaintiff claimed that her total damages were nearly $28 million, calculated as follows:

| | |
|---|---|
| Loss of earning capacity: | $1,616,762 |
| Non-economic injuries: | $250,000 |
| Past medical costs: | $672,959 |
| Future medical and attendant care costs: | $25,411,798 |
| | |
| TOTAL: | $27,951,519 |

4

permitted DHCS to place a lien on plaintiff's settlement, such lien was prohibited by the "anti-lien" provision of the federal Medicaid Act, 42 U.S.C. section 1396p(a)(1). The court explained: "[T]he plain language of [42 U.S.C.] Section 1396p(a)(1) bars a lien from being imposed against Plaintiff's settlement proceeds arising from medical expenses properly and correctly paid by DHCS. . . . DHCS does not argue that medical assistance benefits were incorrectly paid to Plaintiff which would allow the opportunity for DHCS to recover from Plaintiff pursuant to [42 U.S.C.] Section 1396p(b)(1). DHCS has instituted a lien due to the expenses it paid for Plaintiff's medical care. Thus, based on the statutory language[,] complying with [both] the federal and state provisions with respect to recovery of advanced medical expenses pursuant to a settlement is an impossibility . . . . 'Under the Supremacy Clause, [w]here state and federal law . . . conflict, state law must give way.' [Citation.] Here, there is a conflict between the right of DHCS to be paid from a beneficiary's settlement proceeds and federal statutory law which prohibits a lien from being imposed against a settlement of an individual, before death, due to medical assistance expenses paid for that beneficiary." The court thus ordered that DHCS would "recover zero dollars on its lien claim with respect to this action[.]"

DHCS timely appealed from the order denying its Medi-Cal lien.

## DISCUSSION

DHCS contends that the trial court erred in denying its lien because the United States Supreme Court has expressly held that a state may impose a lien on a Medicaid recipient's recovery from a third-party tortfeasor, so long as such lien is limited to the portion of the recovery attributable to past medical expenses.

5

Alternatively, DHCS urges that the plain language and history of the Medicaid Act confirm that the Act does not preempt California's Medi-Cal lien statutes.

Plaintiff contends that the United States Supreme Court has never held that states may recover portions of tort settlements attributable to past medical care from Medicaid beneficiaries, and that such an interpretation is inconsistent with the Medicaid Act's plain language and legislative history. In the alternative, plaintiff contends there is no evidence that any portion of her settlement was attributable to her past medical expenses; to the contrary, she urges, the trial court made an implied finding, supported by substantial evidence, that her settlement did *not* include past medical expenses.

As we discuss more fully below, although the Supreme Court has never specifically held that Medicaid liens are permitted under the circumstances presented here, that conclusion is supported by Supreme Court dicta and is compelled by the plain language of the Act. The trial court therefore erred in entirely denying DHCS's lien. Further, because the trial court expressly did not consider whether plaintiff's settlement included compensation for past medical expenses, we cannot imply it made such a finding. We therefore will reverse and remand to the trial court for further proceedings.

## I.
## Appealability and Standard of Review

A final determination of rights and obligations with respect to a Medi-Cal lien is appealable pursuant to section 14124.76, subdivision (c). Because the present appeal raises pure questions of law, our review is de novo. (*Lima v. Vouis* (2009)

6

174 Cal.App.4th 242, 253; *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615, 622 (*Espericueta*).)

## II.

### Statutory Framework and Relevant Case Law

*A.     The Federal Medicaid Act*

In 1965, Congress created the federal Medicaid program by enacting Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.).  Medicaid is a medical assistance program for low-income individuals that is jointly funded by the federal and state governments.  States' participation in the Medicaid program is optional; however, any state that chooses to participate must develop and implement a state plan that conforms to federal law. (*Harris v. McRae* (1980) 448 U.S. 297, 301.)

The Medicaid Act includes several provisions that require states, as a condition of receiving federal Medicaid funds, to seek reimbursement for payments made on behalf of Medicaid beneficiaries who later recover from third-party tortfeasors.  As relevant here, states must require Medicaid beneficiaries to "assign [to] the State any rights [of the beneficiary] . . . to payment for medical care from any third party" (the assignment clause).  (42 U.S.C. § 1396k(a)(1)(A).)  Further, states must "ha[ve] in effect laws under which, to the extent that payment has been made under the [state's Medicaid plan] for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services" (the acquisition-of-rights clause).  (42 U.S.C. § 1396a(a)(25)(H).)  Finally, states must "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the [state's Medicaid] plan,"

7

and "in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of [obtaining] such recovery, . . . [to] seek reimbursement for such assistance to the extent of such legal liability" (the reimbursement clause). (42 U.S.C. § 1396a(a)(25)(A)–(B).)

The Act also includes provisions that prohibit states from recovering funds paid on behalf of Medicaid beneficiaries from the beneficiaries themselves. One such provision—the "anti-lien" provision—says that, except in circumstances not relevant here, "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." (42 U.S.C. § 1396p(a)(1).) Another such provision—the "anti-recovery" provision—says that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in [circumstances not present here]." (42 U.S.C. § 1396p(b)(1).) As the Supreme Court has noted, the assignment, acquisition-of-rights, and reimbursement provisions, on the one hand, and the anti-lien and anti-recovery provisions, on the other, "exist[] in some tension" with one another. (*Wos v. E. M. A.* (2013) 568 U.S. 627, 633 (*Wos*).)

B.    *State Medi-Cal Act*

California has elected to participate in Medicaid by establishing the Medi-Cal program. California's implementing legislation, known as the Medi-Cal Act, is codified at

8

section 14000 et seq.  (See § 14000.4 [short title].)  DHCS is the state agency charged with administering the Medi-Cal program.

The Medi-Cal Act states that when benefits are provided to a Medi-Cal beneficiary because of an injury for which a third party or carrier is liable, DHCS has the right to recover from such party or carrier the reasonable value of the Medi-Cal benefits provided.  (§ 14124.71, subd. (a).)  DHCS may obtain reimbursement by filing an action directly against a third-party tortfeasor, by intervening in a Medi-Cal beneficiary's action against a third party, or by filing a lien against a beneficiary's settlement, judgment, or award.  (§§ 14124.71, 14124.72, 14124.73; see also *Espericueta, supra,* 164 Cal.App.4th at pp. 622–623; *Kizer v. Ortiz* (1990) 219 Cal.App.3d 1055, 1058–1059.)  If DHCS files a lien in an action pursued by a beneficiary alone, DHCS's claim for reimbursement is reduced by 25 percent, representing its share of attorney fees, as well as by its statutory share of litigation costs.  (§ 14124.72, subd. (d).)

"No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the [DHCS] director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy the director's lien.  Recovery of the director's lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary.  All reasonable efforts shall be made to obtain the director's advance agreement to a determination as to what portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided [on] behalf of the beneficiary.  Absent the director's

9

advance agreement as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision.  Either the director or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures.  In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in *Arkansas Department of Health and Human Services v. Ahlborn* (2006) 547 U.S. 268 and other relevant statutory and case law." (§ 14124.76, subd. (a).)

C.     *Relevant Case Law*

The United States Supreme Court has twice considered whether laws permitting states to impose liens on Medicaid recipients' third-party tort settlements violate the anti-lien provisions of the Medicaid Act.  The first case to address the issue, *Arkansas Department of Health & Human Services v. Ahlborn* (2006) 547 U.S. 268 (*Ahlborn*) was brought by a Medicaid recipient who, after suffering catastrophic injuries in a car accident, sued the alleged tortfeasors for past and future medical costs, personal injury, past and future pain and suffering, and past and future lost wages.  The case settled for $550,000, which was not allocated among the various categories of damages.  The Arkansas Department of Health Services (ADHS) imposed a lien against the settlement proceeds in the amount of $215,645, which represented the total payments made by ADHS for Ahlborn's care.  Ahlborn then filed suit seeking a

10

declaration that ADHS's lien violated the Medicaid Act because it allowed the state to claim a greater portion of the settlement than was properly attributable to her past medical expenses.[3] (*Id*. at pp. 273–274.)

The Supreme Court held that the Medicaid Act precluded ADHS from imposing a lien on any portion of Ahlborn's settlement not attributable to her past medical expenses. (*Ahlborn*, *supra*, 547 U.S. at p. 280.) It noted, first, that the Act requires recipients, as a condition of eligibility, to "assign the State any rights . . . to payment *for medical care* from any third party." (42 U.S.C. § 1396k(a)(1)(A), italics added.) By its plain language, therefore, the statute appeared to limit the state's lien to only that portion of Ahlborn's settlement attributable to medical expenses. Further, the Act prohibits states from placing a lien on "the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." (42 U.S.C. § 1396p.) The court observed that, considered alone, this provision "would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care," but Ahlborn "does not ask us to go so far." (*Ahlborn*, *supra*, 547 U.S. at p. 284.) Instead, Ahlborn "assume[d] that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for

---

[3]     The parties stipulated that Ahlborn's entire claim was reasonably valued at about $3 million, and the settlement ($550,000) was about one-sixth of that sum. The parties also agreed that if Ahlborn's construction of federal law was correct, then ADHS would be entitled to only the portion of the settlement that constituted reimbursement for past medical expenses ($35,581). (*Ahlborn*, *supra*, 547 U.S. at p. 274.)

11

medical care," but urged that the anti-lien provision precluded attachment of the remainder of the settlement.[4] The court agreed: "There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) [the reimbursement clause] and 1396k(a) [the assignment clause]. And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient 'assign' in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. [Citations.] But that does not mean that the State can force an assignment of, or place a lien on, any other portion of Ahlborn's property. As explained above, the exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies." (*Id.* at pp. 284–285.)

The high court considered a related issue several years later in *Wos*, *supra*, 568 U.S. 627. *Wos* concerned a North Carolina statute requiring that up to one-third of a Medicaid beneficiary's recovery from a third party for a tortious injury be paid to the state as reimbursement for payments the state made for the beneficiary's medical treatment on account of

---

[4]    In view of the posture in which the case was presented, the court assumed without deciding "that a State can fulfill its obligations under the federal third-party liability provisions by requiring an 'assignment' of part of, or placing a lien on, the settlement that a Medicaid recipient procures on her own." (*Ahlborn*, *supra*, 547 U.S. at p. 280, fn. 9.)

the injury.  (*Id*. at p. 630.)  The court concluded that the North Carolina statute was incompatible with the Medicaid Act because it "sets forth no process for determining what portion of a beneficiary's tort recovery is attributable to medical expenses. Instead, North Carolina has picked an arbitrary number—one-third—and by statutory command labeled that portion of a beneficiary's tort recovery as representing payment for medical care."  (*Id*. at p. 636.)  The North Carolina statute thus "allow[s] the State to take one-third of the total recovery, even if a proper stipulation or judgment attributes a smaller percentage to medical expenses."  (*Id*. at p. 638.)  The court concluded that this "irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act's clear mandate that a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to medical expenses."  (*Id*. at p. 639.)

In reaching this conclusion, the court characterized its prior decision in *Ahlborn* as holding "that the Medicaid statute sets both a floor and a ceiling on a State's potential share of a beneficiary's tort recovery.  Federal law requires an assignment to the State of 'the right to recover that portion of a settlement that represents payments for medical care,' but it also 'precludes attachment or encumbrance of the remainder of the settlement.' [Citation.]  This is so because the beneficiary has a property right in the proceeds of the settlement, bringing it within the ambit of the anti-lien provision.  [Citation.]  That property right is subject to the specific statutory 'exception' requiring a State to seek reimbursement for medical expenses paid on the beneficiary's behalf, but the anti-lien provision protects the beneficiary's

13

interest in the remainder of the settlement." (*Wos, supra*, 568 U.S. at pp. 633–634.)

As the above discussion makes clear, in neither *Ahlborn* nor *Wos* was the court asked to decide the issue before us in the present case: whether states lawfully may impose liens on that portion of a Medicaid beneficiary's judgment or settlement attributable to past medical care. That issue was squarely presented to the Court of Appeals for the Third Circuit in *Tristani v. Richman* (3d Cir. 2011) 652 F.3d 360 (*Tristani*). *Tristani* arose under the Pennsylvania Medicaid statute, which provided that if a Medicaid beneficiary pursued a claim against a third party for medical costs, the state could impose a lien " 'against the medical portion of the judgment or award, [in the] amount of [the Pennsylvania Department of Public Welfare's (DPW)] expenditures for the benefit of the beneficiary under the medical assistance program.' " (*Id*. at p. 368.) The *Tristani* plaintiffs claimed that DPW's practice of asserting liens on the medical portion of a Medicaid recipient's recovery violated the anti-lien provision of the Act; DPW countered that its liens fell within an exception to the anti-lien provision of the Medicaid Act, as recognized by the Supreme Court in *Ahlborn*. (*Id*. at p. 368.)

The district court agreed with the plaintiffs that although the Medicaid Act permits states to sue third-party tortfeasors responsible for injuries to Medicaid beneficiaries in order to recover Medicaid outlays, states could not recover such outlays by imposing liens on money recovered from third parties by the Medicaid beneficiaries *themselves*. A divided panel of the Court of Appeals reversed. The court noted, first, that the anti-lien and anti-recovery provisions significantly predated the assignment, acquisition-of-rights, and reimbursement clauses, and were

14

intended to insulate elderly beneficiaries from paying the costs of their care during their lifetimes.  (*Tristani*, *supra*, 652 F.3d at p. 371.)  The court noted, however, that these and other provisions "ultimately allow[] a state to recoup its medical assistance expenditures directly from the estate of a deceased beneficiary," and thus "in no way entitle[] beneficiaries to retain monies paid to them by liable third parties in compensation for their medical costs." (*Id*. at p. 372.)  The court found that the legislative history of the anti-lien and anti-recovery provisions confirmed this understanding:  As a Senate Report discussing the provision stated, " '[t]his provision was inserted in order to protect the individual and [her] spouse from the loss of their property, *usually the home*, during their lifetime.' " (*Ibid.*, italics added.) Thus, the court concluded, "Congress's concern for protecting a Medicaid beneficiary's personal assets—not her interest in recovering medical costs paid on her behalf—clearly animated the enactment of the anti-lien and anti-recovery provisions. Moreover, a beneficiary's property interest in her home is readily distinguishable from the inchoate interest that she retains in her chose in action [against a third-party tortfeasor for medical expenses], particularly since Congress has mandated assignment of that chose to the state.  We cannot agree that Congress intended these provisions to prohibit states from placing liens on recoveries from liable third parties." (*Ibid.*, fn. omitted.)

The court next considered the reimbursement clause, which was enacted after the anti-lien and anti-recovery provisions.  The reimbursement clause requires states to ascertain the legal liability of third parties, to treat such legal liability as a resource of the Medicaid recipient for purposes of determining eligibility for medical assistance, and "in any case where such a legal

liability is found to exist after medical assistance has been made available on behalf of the individual, . . . [to] seek reimbursement for such assistance to the extent of such legal liability." (*Tristani, supra*, 652 F.3d at pp. 372–373.) The court noted that although the anti-lien and anti-recovery provisions were in force when the reimbursement provision was enacted, "Congress made no attempt to reconcile this new requirement with the prohibition against states recovering medical assistance payments made on behalf of Medicaid beneficiaries. Instead, the statute simply requires states to consider any known third-party liability as an asset of the individual in determining eligibility, and to seek reimbursement when liability is discovered after medical assistance payments have been made." (*Id*. at p. 373.)

The court turned finally to the assignment clause, which requires beneficiaries "to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this title and on whose behalf the individual has the legal authority to execute an assignment of such rights, . . . to payment for medical care from any third party." (*Tristani, supra*, 652 F.3d at p. 373.) The court noted that the district court viewed this clause as evidence of congressional intent to require states to intervene in lawsuits initiated by Medicaid beneficiaries against third parties, but "[w]e see it differently." (*Id*. at p. 374.) The court explained: "As the [DPW] correctly point[s] out, a partial assignment typically creates a lien on a portion of the recovery in favor of the assignee. [Citations.] We do not believe that Congress would prohibit states from imposing liens to recoup medical costs while at the same time imposing a requirement that has the legal effect of creating such liens. The more logical conclusion is that Congress understood that the legal

16

effect of the [assignment clause] would be to provide the states with a lien on recoveries of medical costs.  Thus, in our view, the [assignment clause] is evidence of Congress's intent to except recoveries of medical assistance payments whenever third parties are found liable for them."  (*Ibid.*)

The court opined that "the only way to harmonize the conflicting language of the anti-lien and anti-recovery provisions with the later-enacted reimbursement and forced assignment provisions is to conclude that the anti-lien and anti-recovery provisions do not apply to medical costs recoverable from liable third parties.  The anti-lien and anti-recovery provisions evince congressional intent to protect the assets of Medicaid recipients, and to ensure that beneficiaries are not forced to personally bear the costs of their medical care.  Meanwhile, the reimbursement and forced assignment provisions require states to recover the costs of medical assistance payments despite the apparent prohibition against seeking recovery of medical assistance payments.  It defies common sense to conclude that Congress intended to protect the rights of Medicaid beneficiaries to recover medical costs that they never paid in the first place.  Indeed, federal law requires beneficiaries to assign their right to recover such medical costs to the state, because it is the state—not the beneficiaries—that pays these costs."  (*Tristani*, *supra*, 652 F.3d at p. 374.)

The court noted, moreover, that practical considerations weighed in favor of its holding.  It said:  "At present, over thirty states use liens to recoup medical expenses paid on behalf of Medicaid beneficiaries from liable third parties.  See *State v. Peters*, 287 Conn. 82, 946 A.2d 1231, 1239 n. 19 (2008).  And disparate federal and state courts have overwhelmingly endorsed

17

this practice. [Citation.] In Pennsylvania, the authority for imposing such liens dates back to 1980. [Citations.] Since then, Congress has had occasion to amend the anti-lien and anti-recovery provisions, and has chosen not to prohibit this widespread and pervasive practice. Its failure to do so further supports our holding that Medicaid medical expense liens are excepted from the anti-lien and anti-recovery provisions. See *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ('Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.')." (*Tristani*, *supra*, 652 F.3d at p. 375.)

The court summarized its conclusion at follows: "The text of the [Medicaid Act], when combined with its structure, purpose, and legislative history, reveals that Congress sought to accomplish different goals in enacting the anti-lien and anti-recovery provisions on the one hand, and the reimbursement and [assignment clauses] on the other hand. While the anti-lien and anti-recovery provisions were intended to protect the assets of Medicaid recipients, the subsequently-enacted [assignment and reimbursement clauses] were intended to limit the financial burden of Medicaid on the states and ensure that Medicaid beneficiaries did not receive a windfall by recovering medical costs they did not pay. In this context, the [assignment and reimbursement clauses] are best viewed as creating an implied exception to the anti-lien and anti-recovery provisions of the Act. Our conclusion is bolstered by the fact that the statutory mechanism created by Congress for beneficiaries to relinquish their right to recover medical assistance payments to the state—a partial assignment—itself creates a lien. Consequently, we hold

18

that liens on settlements or judgments limited to medical costs are not prohibited by the anti-lien and anti-recovery provisions of the [Medicaid] Act." (*Tristani*, *supra*, 652 F.3d at p. 375, fn. omitted.)[5]

The dissenting judge in *Tristani* reached a different conclusion, urging that while the Medicaid Act permits states to seek reimbursement directly from third parties, it does not permit liens on recoveries obtained from third-party tortfeasors by Medicaid beneficiaries themselves. The dissent noted that the reimbursement clause requires states to take all reasonable measures to collect sufficient information to enable the state "to ascertain the legal liability of third parties," and further to submit a plan for "pursuing claims against such third parties." (*Tristani*, *supra*, 652 F.3d at p. 379 (dis. opn. of Pollak, J.).) The statute also requires beneficiaries to "assist the State in pursuing . . . any third party who may be liable to pay for care and services available under the plan." (*Id.* at p. 380.) These provisions, the dissent said, envision "an active role in litigation by state

---

[5]  See also *I.P. ex rel. Cardenas v. Henneberry* (D. Colo. 2011) 795 F.Supp.2d 1189, 1195 [because state can require Medicaid beneficiary to assign right to receive payment for medical care, it may also impose a lien on settlement funds: "Plaintiff seems to take issue with the Colorado statute's use of the word 'lien,' a term also used in the Arkansas statute in *Ahlborn*. [Citation.] The Court, however, finds no material distinction between the two terms. Regardless of whether the state imposes a lien on a Medicaid recipient's settlement proceeds or whether it forces an assignment of those proceeds, the result is the same. The state acquires a legal right over the proceeds"].

entities, not the passive role played by the DPW." (*Id.* at p. 382.) Taken together, the dissent believed these provisions revealed Congress's intent to "pursue liable third parties directly," (*ibid.*) rather than to "seek recoveries 'of medical assistance correctly paid' from Medicaid beneficiaries' settlements and judgments." (*Id.* at p. 385.)

## III.

## The Federal Medicaid Act Does Not Preempt California Law Permitting DHCS's Lien

Having set out the relevant statutes and case law, we now turn to the contentions made by the parties in the present appeal. DHCS's initial contention is that the United States Supreme Court has directly held that states may impose liens on Medicaid beneficiaries' recoveries from third party tortfeasors, so long as such liens are limited to past medical expenses. We do not agree. The court in *Ahlborn* expressly declined to reach this issue, assuming without deciding that a state may place a lien on that portion of a Medicaid beneficiary's recovery designated as payment for past medical care. (*Alhborn*, *supra*, 547 U.S. at p. 284, fn. 13 [anti-recovery provision "would appear to forestall any attempt by the State to recover benefits paid;" however, because the parties "neither cite nor discuss the antirecovery provision," the court "leave[s] for another day the question of its impact on the analysis"].) The *Wos* court was not so explicit, but the question presented in that case—whether the federal anti-lien provision preempted a North Carolina law requiring a Medicaid beneficiary to pay to the state up to one-third of any damages recovered for a tortious injury—made it unnecessary for the court to decide whether a state may impose a lien on the portions of a beneficiary's recovery designated for past medical

20

care. We therefore cannot conclude, as DHCS would have us do, that "controlling U.S. Supreme Court precedent" requires us to reverse the trial court's order refusing the agency's lien. (E.g., *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 [" ' "cases are not authority for propositions not considered" ' "].)

However, although *Wos* did not decide the issue before us, its analysis strongly supports the proposition that a state may place a lien on the share of a Medicaid beneficiary's recovery attributable to medical care. As we have described, *Wos* explained that the Medicaid Act "sets both *a floor* and a ceiling on a State's potential share of a beneficiary's tort recovery" because a Medicaid beneficiary's property right to the proceeds of a judgment or settlement "is subject to the specific statutory 'exception' requiring a State to seek reimbursement for medical expenses paid on the beneficiary's behalf." (*Wos*, *supra*, 568 U.S. at pp. 633–634, italics added.) The court also said that the North Carolina law permitting the state to place a lien on one-third of a Medicaid beneficiary's tort recovery was "incompatible with the Medicaid Act's clear mandate that a State may not demand any portion of a beneficiary's tort recovery *except the share that is attributable to medical expenses.*" (*Id.* at p. 639, italics added.) In short, while the Supreme Court did not decide the issue before us, its statements in dicta—which, while not binding, are persuasive—strongly suggest that the Supreme Court would find California's Medi-Cal lien provisions consistent with federal law. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 563 [although statements unnecessary to a court's decision are not binding precedent, "Supreme Court dicta generally should be followed, particularly where the comments reflect the court's considered reasoning"]; *People v. Wade* (1996) 48 Cal.App.4th

21

460, 467 [Supreme Court dicta highly persuasive]; *City of Los Angeles v. San Pedro, L.A. & S.L.R. Co.* (1920) 182 Cal. 652, 660 ["The statements in the opinions of the Supreme Court of this state and of the United States . . . although obiter dicta, are very persuasive"].)

Turning to the Medicaid Act itself, we agree with DHCS that the assignment, acquisition-of-rights, and reimbursement clauses create implied exceptions to the anti-lien and anti-recovery provisions. Plaintiff's contention that a Medicaid lien violates the anti-lien provision of the Medicaid Act assumes that a Medicaid beneficiary's recovery from a third party is the beneficiary's "property" within the meaning of 42 United States Code section 1396p(a)(1), which says that "[n]o lien may be imposed against *the property of* any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." (Italics added.) But as we have discussed, the assignment clause mandates that states require Medicaid beneficiaries to "assign [to] the State any rights [of the beneficiary] . . . to payment for medical care from any third party," and the acquisition-of-rights clause requires states to "ha[ve] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services." (42 U.S.C. §§ 1396k(a)(1)(A), 1396a(a)(25)(H).) Taken together, these provisions give *the state*, not the Medicaid beneficiary, the right to recover damages from third parties for past medical expenses. To the extent, therefore, that the beneficiary recovers damages for past medical expenses from a

22

third party as part of a settlement or judgment, those damages belong to the state, not to the beneficiary.

For this reason, many courts have held, and we agree, that a Medicaid lien against a beneficiary's recovery for medical expenses "does not attach *to the property* of the beneficiary because the beneficiary, by statute, has to assign to the agency 'any rights he or she has to seek reimbursement from any third party up to the amount of medical assistance paid.' ([*Cricchio v. Pennisi* (1997) 90 N.Y.2d 296, 304 [660 N.Y.S.2d 679, 683 N.E.2d 301, 305].)" (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 823, italics added.) Stated differently, " 'Because the injured Medicaid [beneficiary] has assigned its recovery rights to [the state agency], and [the agency] is subrogated to the rights of the beneficiary [citations], the settlement proceeds are resources of the third-party tortfeasor that are owed to [the agency].' [Citation.] The state agency therefore 'steps in and puts a lien on the recovery *before it becomes the property of the Medicaid* [*beneficiary*].' ([*Wilson v. Washington* (2000) 142 Wash.2d 40 [10 P.3d 1061, 1066], italics added.)" (*Id.* at p. 823.)

The facts of the present case are consistent with the conclusion that the portion of plaintiff's settlement to which DHCS claims a right is not the "property" of plaintiff within the meaning of the anti-lien provision. The trial court's order approving the parties' settlement specifically directed defendants to pay to plaintiff's counsel the sum of $649,289.75 "to be held in [plaintiff's attorney's] Trust Account for any potential Medi-Cal lien," subject to "reduction on further order of the court upon determination of the claim for reduction." The funds claimed by DHCS thus have never been plaintiff's property; instead, they were paid by defendants directly into plaintiff's attorney's trust

23

account, to be distributed as ordered by the court. The state's lien therefore does not violate the Medicaid Act because it does not attach to "property" of a Medicaid beneficiary. (See also *S.S. v. State* (Utah 1998) 972 P.2d 439, 442 ["Payments made by a third party do not legally become the property of the recipient until after a valid settlement, which necessarily must include reimbursement to Medicaid."].)

Our conclusion is reenforced by the reimbursement clause of the Medicaid Act, which specifically requires states, in any case in which a third party has been found legally liable for medical assistance paid for by the state's Medicaid program, to "*seek reimbursement for such assistance to the extent of such legal liability.*" (42 U.S.C. § 1396a(a)(25)(B), italics added.) Plaintiff contends states must seek such reimbursement directly from third parties, not from beneficiaries, but that is not what the reimbursement clause says. To the contrary, in contrast with 42 United States Code section 1396a(a)(25)(A), which directs states to "ascertain the legal liability *of third parties*" and to create a state plan "for pursuing claims *against such third parties*" (italics added), 42 United States Code section 1396(a)(25)(B) does not include an analogous limitation on the persons or entities from which states may seek reimbursement. We decline to read into subdivision (a)(25)(B) a limitation not present in the statutory language itself.

Plaintiff suggests that our conclusion creates an "implied repeal" of the Medicaid Act's anti-lien and anti-recovery provisions, but we do not agree. " '[A]bsent "a clearly expressed congressional intention," . . . [a]n implied repeal will only be found where provisions in two statutes are in "irreconcilable conflict," or where the latter Act covers the whole subject of the

24

earlier one and "is clearly intended as a substitute." ' [Citation.]" (*Carcieri v. Salazar* (2009) 555 U.S. 379, 395.)  In the present case, we are dealing not with two statutes, but with one—namely, the federal Medicaid Act.  Moreover, as we have said, we find no "irreconcilable conflict" between the anti-lien and anti-recovery provisions, on the one hand, and the assignment, acquisition-of-rights, and reimbursement clauses, on the other.  To the contrary, we believe that, read together, these clauses permit a lien on a Medicaid beneficiary's recovery of medical expenses, which is not the "property" of the beneficiary.

We also do not agree with plaintiff's contention that the legislative history of the Medicaid Act post-*Ahlborn* requires the conclusion that DHCS's lien violates the Act's anti-lien provision. Plaintiff points to four amendments Congress passed in 2013, but then delayed implementing and ultimately repealed.  According to plaintiff, these amendments would have given states "first-dollar liens and rights to recover every dollar they spent for care and treatment of Medicaid recipients who were injured by tortfeasors, even if those recipients were not fully compensated for their other injuries," as well as "an assignment of a Medicaid recipient's tort recovery, instead of an assignment of rights against the tortfeasor."  Because Congress ultimately repealed these amendments, plaintiff urges that Congress "does not want the States to be pursuing Medicaid recipients with threats of liens, seizures of their properties, and demands for reimbursements."

There are several problems with plaintiff's analysis.  The plain language of the amendments suggests that Congress acted in 2013 to legislatively overrule *Ahlborn* by allowing states to place liens on Medicaid recipients' *entire* third-party recoveries,

25

rather than on only the portion of such recoveries attributable to past health care. By repealing these amendments, Congress restored the post-*Ahlborn* status quo—that is, it prohibited states from placing liens on any portion of a beneficiary's third-party recovery not attributable to past health care. But we see nothing in the amendments' plain language to suggest that Congress also intended to limit the rights of states to impose liens on the portion of such recovery attributable to the past health care provided through the Medicaid program. Nor has plaintiff provided us with any legislative history in the form of committee reports or otherwise that would provide insight into Congress's intention. We therefore cannot conclude, as plaintiff would have us do, that Congress intended by its repeal of the 2013 amendments to prohibit states from imposing liens on the medical care portion of Medicaid beneficiaries' recoveries.

We note finally, as did the court in *Tristani*, that states have long imposed Medicaid liens limited to medical costs, and courts routinely have found such liens to be valid. (See, e.g., *Tristani, supra*, 652 F.3d at p. 369, fn. 10; *Martinez v. State Dept. of Health Care Services* (2017) 19 Cal.App.5th 370, 372; *Lima v. Vouis, supra*, 174 Cal.App.4th at p. 262.) Although Congress repeatedly has had the opportunity to amend the Medicaid Act to prohibit such liens, it has never done so. We therefore infer Congress does not consider Medicaid liens limited to medical costs to be inconsistent with the anti-lien or anti-recovery provisions of the Medicaid Act. (See *Lorillard v. Pons* (1978) 434 U.S. 575, 580–581.)

For all of these reasons, we conclude that DHCS is entitled to recover the portion of plaintiff's settlement attributable to past

26

medical care paid for by DHCS through the Medi-Cal program. The trial court erred in concluding otherwise.

## IV.

### The Superior Court Did Not Impliedly Find that Plaintiff's Settlement Omitted Past Medical Expenses

Plaintiff contends that even if we reject her interpretation of the Medicaid Act, we nonetheless can affirm the trial court's order by concluding that the court impliedly found her settlement did not include past medical expenses. We do not agree. In denying DHCS's Medi-Cal lien, the trial court issued a seven-page order that set out in detail the trial court's interpretation of the relevant statutory and case law, concluding that DHCS was not entitled to recover on its lien because "the plain language of [42 United States Code] Section 1396p(a)(1) bars a lien from being imposed against Plaintiff's settlement proceeds arising from medical expenses properly and correctly paid by DHCS." The court's order thus makes clear that Judge Fujie disallowed the state's lien because she concluded it was barred by the anti-lien provision of the Act—*not* because she found plaintiff's recovery did not include past medical expenses.

Where a written order clearly expresses the legal and factual basis for the trial court's resolution of controverted issues, an appellate court will not imply findings the trial court did not make. (E.g., *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 ["When the record clearly demonstrates what the trial court did, we will not presume it did something different."]; *Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1015 [same].) Because Judge Fujie clearly set out why she denied DHCS's lien, we will not presume that she denied it for other reasons.

Nor can we conclude, as plaintiff suggests, that as a matter of law her settlement could not have included any recovery for past medical expenses. Plaintiff suggests that "[h]aving acquired by forced assignment the right to past medical expenses, the State—not the Medicaid recipient—is responsible for pursuing the tortfeasor for reimbursement." But plaintiff's analysis is at odds with California law, which specifically provides that "[n]o settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the [DHCS] director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy [a] director's lien [on] . . . *that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary*." (§ 14124.76, subd. (a), italics added.) This provision cannot be reconciled with plaintiff's suggestion that a Medi-Cal beneficiary's settlement with a tortfeasor necessarily excludes damages for past medical expenses.

## V.

## This Matter Must Be Remanded for the Trial Court to Determine, in the First Instance, the Amount of DHCS's Lien

Having concluded that DHCS is entitled to recover the portion of plaintiff's settlement attributable to past medical care costs paid for by the state, we must next consider what that portion is. The procedure for allocating settlement funds between a beneficiary and DHCS is set out in section 14124.76, subdivision (a), which provides that if a Medi-Cal beneficiary and DHCS cannot agree as to what portion of a settlement, judgment, or award represents payment for medical expenses, "the matter

28

shall be submitted to a court for decision." Either DHCS or the beneficiary "may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures." (§ 14124.76, subd. (a).)

In the present case, plaintiff and DHCS have not been able to agree on DHCS's share of the settlement, and because the trial court concluded that federal law precluded DHCS's lien in any amount, it did not decide, as section 14124.76, subdivision (a) directs, "what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be." We shall direct the trial court to make this determination on remand.

**DISPOSITION**

The order denying DHCS's lien is reversed. On remand, the trial court shall conduct a hearing pursuant to Welfare and Institutions Code section 14124.76 to determine (1) what portion of plaintiff's settlement is attributable to medical care expenses paid for by the state, and (2) the reimbursement to which DHCS is entitled. DHCS is awarded its appellate costs.

DHCS's motion for judicial notice (filed August 2, 2021), and plaintiff's motion to strike portions of DHCS's reply brief or for leave to file a supplemental brief (filed August 16, 2021) are denied.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.

We concur:



EGERTON, J.



MATTHEWS, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.